In the operation of the apparatus it is preferable that the motor be intermittently driven and that during certain periods, the film be allowed to remain at rest as for instance, when the film treating means is coupled with a film exposing means for it is then possible, while the film is at rest, to effect an exposure of the same to actinic light photographically."

Further, in describing the operation of his mechanism, Beidler says: " * * * Another conductor 165 leads from the motor to the source of electricity 166 and a conductor 167 leads from the source of electricity to the switch terminal 168, so that by pressing the switch 162, the motor is energized and the stud 149 is moved from the nose of the cam 150 after which a normal current is established through the switch, and the motor will continue to run until the gear wheel 133 has traveled once around and the stud has contacted the cam and lifted the switch lever."

Further analysis of the other references is not necessary.

In our opinion the appellant, in obtaining the allowance of claim 5 showing the specific structure disclosed by him, was given the benefit of all the patentable disclosures made by him in his application.

The decision of the Board of Appeals is affirmed.

Affirmed.

## In re VALENTINE.
### Patent Appeal No. 2737.

Court of Customs and Patent Appeals.
May 25, 1931.

Henry Van Arsdale, of New York City, for appellant.

T. A. Hostetler, of Washington, D. C., for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Appellant herein filed application in the United States Patent Office for a patent for a surgical bandage, in which application, as amended, appellant made six claims, Nos. 20 and 22 of which are regarded as illustrative and follow:

"20. A surgical bandage comprising a strip of woven gauze having pulpified edges."

"22. A surgical bandage comprising a strip of surgical gauze having pulpified edges, the pulpified material being immutably interblended where the threads crossed each other, and the intermediate material being friable."

The examiner and the Board of Appeals rejected appellant's claims on a single reference: Toles, 745,028, November 24, 1903.

According to the specification in appellant's application, his alleged invention consists of a surgical bandage in which the warp and weft threads at the margins or edges of the bandage have been mashed into a pulpified condition so that the threads are interblended to the extent that raveling does not take place unless the mashed portions of the thread are separated from the other portion of the bandage.

We agree with the Board of Appeals that Toles completely anticipates appellant's alleged invention. Toles taught the same thing that is taught by appellant and further said that the edges could be additionally secured by adhesive material. Toles taught two methods of making a nonraveling bandage, one of which methods is identical with the teachings of appellant. Toles said: " * * * Each edge of the bandage may be crushed, as indicated by 5 in Fig. 4, the pressure serving to cohere or cement the edge, sticking the threads firmly together." And again: "In addition to crushing the edges of the bandage or like article the edges may be additionally secured by adhesive material."

Appellant argues at great length that since Toles had the notion that using an adhesive material helped to cement the edges of the bandage, his invention was not the same as that of appellant.

We cannot agree with this contention. One of the methods by which Toles proposed to bring about the nonraveling result was to "crush" the edges or margins of the bandage. Appellant "mashes" the edges. Appellant claims no particular way of mashing the edges and says it may be done in any suitable manner which would supply "suitable pressure."

The decision of the Board of Appeals is affirmed.

Affirmed.

## In re BERTRAM.
### Patent Appeal No. 2767.

Court of Customs and Patent Appeals.
May 27, 1931.

Paul Carpenter, of Washington, D. C. (Brendan J. McCann, of Chicago, Ill., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Bertram has here appealed from a decision of the Board of Appeals of the United States Patent Office, affirming the decision of the Examiner, rejecting, as not defining invention over the prior art, twelve claims in an application for patent relating to improvements in "Reversing Gear Mechanism." Claims 6 and 12 are quoted as illustrative:

"6. In a fluid operated reversing gear mechanism, in combination, two cylinders, a piston in each, said pistons being connected by a common piston rod, means comprising a single rotary valve for controlling the admission and exhaust of pressure from said cylinders, said means being arranged when in one position to be on lap wherein all fluid connections are closed and when moved therefrom to cause the admission of pressure to one of said cylinders and the exhaust of pressure from the other of said cylinders."

"12. In combination, a cylinder and a piston operable therein, a motion imparting lever connected to be operated by said piston for imparting movement to an element to be moved, a valve for controlling flow of fluid under pressure to said cylinder, an operating lever mounted on the same axis as said motion imparting lever, and a third lever connected to said valve and pivoted at its medial portion on a part of said operating lever and having a sliding connection at one end with said motion imparting lever."

References are cited as follows: Cunningham, 721160, February 24, 1903; Ragonnet, 930225, August 3, 1909; Hunter, 1206707, November 28, 1916; Helmholtz et al., 1208556, December 12, 1916; Stafford, 1230049, June 12, 1917; Imblum, 1258337, March 5, 1918.

The mechanism involved in appellant's combination is somewhat complicated, and is difficult of explanation except by using the technical terms and element numbers. Broadly, it comprises a motor having two cylinders and two pistons connected by a piston rod. Fluid, preferably compressed air, is admitted to the cylinders through a valve and two passages; the valve being constructed so that, when fluid is admitted to either cylinder, it is exhausted from the other, and, when in neutral position, both of the passages, above referred to, are closed.

It appears to be designed primarily as a mechanism for use in reversing locomotive engines, but the claims do not limit it to this particular use.

Every feature of claim 6 appears in the reference patent of Helmholtz and Bertram, except the single rotary valve, and this is present in Cunningham, Imblum, Hunter, Stafford and Ragonnet. Appellant has modified the valve, as shown by these references, so as to render it workable in the new relation arranged in his combination, but this modification, as he discloses it, cannot be held to be inventive as distinguished from mechanical skill.

In the brief of the Solicitor for the Patent Office, the following is recited to show that claim 12 is directly readable upon Fig. 6 of the Cunningham drawings:

" 'A cylinder' of the claim is found at I, 'a piston operable therein' at M, 'a motion imparting lever connected to be operated by said piston for imparting movement to an element to be moved' is found at OO' (O and O' both being fixed to shaft F) while Q is 'a